# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

FRED HARRIS,

                                    Plaintiff,

    vs.                                                9:14-CV-404 (GTS/ATB)

STOCKWELL, C.O., et al.,

                                  Defendants.

---

FRED HARRIS, Plaintiff pro se
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights action, plaintiff alleges that he was assaulted by defendants Stockwell, Moore, and Smith, while Sergeant Riley stood by and failed to intervene in the assault. (Amended Complaint ("AC") ¶¶ 17-25) (Dkt. No. 42). Plaintiff also claims that he was denied constitutionally adequate medical care by defendants Kemp and Waterson.[1] (AC ¶¶ 14-16, 26-29). Plaintiff requests substantial monetary relief.[2]

---

[1] The amended complaint also named Lieutenant Laramay, alleging that this defendant failed to properly investigate plaintiff's grievance regarding the other incidents described in the amended complaint. (AC ¶¶ 31-32). Plaintiff's motion to amend was denied with respect to defendant Laramay, and he is not a party to this action. (Dkt No. 41 at 5-6).

[2] Plaintiff's motion to amend was denied relative to the injunctive relief that he requested therein. (Dkt. No. 41 at 5 & n.3). The injunctive relief stemmed from plaintiff's hunger strike and state court proceedings. (*Id.* n.3). None of the named defendants were personally involved in those proceedings, and in any event, at the time of my previous order, the request for injunctive relief was moot. (*Id.*)

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 72). Plaintiff has responded in opposition to the motion. (Dkt. No. 77). For the following reasons, this court will recommend granting the motion in part and denying the motion in part.

## DISCUSSION

**1. Facts**

The events which gave rise to plaintiff's claims occurred in January 2013 at Upstate Correctional Facility ("Upstate"). Plaintiff alleges that defendant Kemp failed to provide plaintiff with any mental health care on January 18, 2013, even though he knew that plaintiff was suicidal. (AC ¶¶ 14-15 (First Claim)). The same day, defendant Sergeant Riley ordered defendants C.O. Stockwell, C.O. Smith, and C.O. Moore to assault plaintiff, which they did. (AC ¶¶ 17-19, 21-24 (Second and Third Claims)). Plaintiff states that the assault was unprovoked, that he was "passive and not resisting" throughout the incident, and that defendant Riley was present during the assault, but failed to intervene.[3] (AC ¶¶ 17, 22-23).

Plaintiff alleges that following the assault, he was taken back to his own cell,[4] and that he sought emergency medical evaluation and treatment for the injuries inflicted by defendants Stockwell, Smith, and Moore. (AC ¶ 26). Plaintiff claims that he attempted to seek medical care for his injuries several times during January of 2013, but

---

[3] Because plaintiff claims that defendant Riley "ordered" the assault, it is logical that he would not have intervened to stop the assault.

[4] Plaintiff was an Office of Mental Health ("OMH") observation cell at the time of the alleged assault.

2

that, beginning immediately after the assault, defendant Waterson "colluded" with defendants Riley, Stockwell, Smith, and Moore to "cover up" the assault by failing to document and photograph the injuries that plaintiff suffered as a result of the assault. (AC ¶ 27).

## II. <u>**Summary Judgment**</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining

3

whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III. <u>Medical Care</u>

### A. Legal Standards

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

#### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

4

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*. Deliberate indifference is equivalent to

5

subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Plaintiff's preference for an alternative treatment or belief that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the

need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

**B.    Application**

    **1.    Defendant Kemp**

Plaintiff alleges that on January 18, 2013, knowing that plaintiff was "suicidal," defendant Kemp[5] failed to provide plaintiff with any mental health care. (AC ¶ 14). Plaintiff essentially disagrees with the care that defendant Kemp provided. Plaintiff testified that he first told defendant Kemp and a mental health nurse at Upstate that he was suicidal on January 14, 2013, and he was moved to the mental health unit at Upstate. (Pl.'s Dep. at 22, 23, 25). At that time, plaintiff had stopped eating. (*Id.*) Defendant Kemp came to plaintiff's cell. Plaintiff had never mentioned being suicidal to anyone at Upstate prior to January 14, 2013. (Pl.'s Dep. at 23). On January 15, 2013, defendant Kemp sent plaintiff to Clinton to see mental health professionals there. (Pl.'s Dep. at 25). Plaintiff was housed in the Clinton observation unit for two days and then was sent back to Upstate on January 17, 2013. (Pl.'s Dep. at 23). During plaintiff's deposition, plaintiff was asked what he expected defendant Kemp to do on January 14,

---

[5] Defendant Kemp is apparently a social worker, who is the OMH Coordinator at Upstate.

2013. (Pl.'s Dep. at 26). Plaintiff stated that Kemp did not give him any "service" or tell plaintiff "the way to not make me feel the way I'm feeling," or help him "deal with this issue." (Pl.'s Dep. at 26). Plaintiff stated that it was Kemp's "duty" to provide plaintiff the "services" that he needed – "words," medicine, or evaluation. (*Id.* at 27-28).

When plaintiff was returned to Upstate on January 17, 2013, he explained to the staff that he "felt suicidal again." (Pl.'s Dep. at 35-36). Although plaintiff was initially sent back to his own cell, he was later sent to an "observation" cell when he told a nurse that he felt like he was going to hurt himself again.[6] (*Id.* at 36). Plaintiff states that he saw defendant Kemp after plaintiff returned from Clinton, but that defendant Kemp only asked him about the hunger strike. (Pl.'s Dep. at 30). Plaintiff testified that defendant Kemp came to his observation cell on January 18, 2013. (Pl.'s Dep. at 37). Defendant Kemp asked plaintiff what happened, and plaintiff told Kemp that he was "feeling suicidal," not feeling "in the right state of mind." (*Id.* at 37-38). Plaintiff claims that at this time, defendant Kemp told defendant Riley to take plaintiff back to his own cell. (*Id.* at 37). The alleged assault happened when the other defendants came to escort plaintiff back to his cell. (*Id.* at 38).

Plaintiff also stated vaguely that defendant Kemp failed to provide him with "treatment" after the "situation" on January 18, 2013. (Pl.'s Dep. at 31). Plaintiff also testified that he never asked defendant Kemp for anything after the "incident," but then stated that he asked him a "couple" of things. (*Id.*) Because plaintiff was not getting

---

[6] Plaintiff never actually hurt himself before.

the "care"[7] he needed, he believed that defendant Kemp was "part of [his] problem." (Pl.'s Dep. at 32).

Plaintiff's vague allegations that defendant Kemp did not give him proper treatment or did not make plaintiff "feel better" do not rise to the constitutional level. The fact that plaintiff believed defendant Kemp should have given him some sort of "medication" also shows that plaintiff simply disagrees with the "treatment" given by defendant Kemp, and any claims against this defendant may be dismissed. *See Lawrence v. Evans*, No. 15-3286, slip op. at 3 (2d Cir. Sept. 27, 2016) (the fact that plaintiff may have preferred different medical treatment is not dispositive as long as the treatment he received was adequate).

### 2. Defendant Waterson

Plaintiff claims that defendant Waterson failed to give plaintiff medical attention after he was allegedly assaulted on January 18, 2013 by defendants Smith, Stockwell, and Moore, at defendant Riley's direction. The medical records show that plaintiff requested emergency sick call ("ESC") on January 18, 2013, complaining of back pain. (Def.s' Ex. D at CM/ECF p.5) (Dkt. No. 72-5). Plaintiff's ambulatory health record ("AHR") shows that, on January 18, 2013, plaintiff was advised that low back pain ("LBP") was "non emergent."[8] (*Id.*) Plaintiff alleges that he was in great pain after the

---

[7] The court must point out, although defendants do not mention it, that if defendant Kemp is a social worker, as plaintiff alleges, he may not have been authorized to prescribe medication for plaintiff. He did apparently arrange for plaintiff to be taken to Clinton to see mental health professionals.

[8] There is absolutely no indication in the AHR note that plaintiff specified the alleged cause of his LBP.

9

assault, but defendant Waterson was engaging in a "cover up" and refused to care for his back or take photographs of the injuries. However, plaintiff was seen the next day on normal sick call ("NSC") and was given ibuprophen for his LBP. (*Id.* at CM/ECF p.4). The signature on the AHR is illegible.[9]

Plaintiff was seen at NSC on January 20, 2013, still complaining of LBP, and he was given additional ibuprofen to take "with food." (*Id.*) The notation also states "NP list." (*Id.*) The signature is illegible. On January 21, 2013, the AHR notation states that plaintiff "refused AM Celexa."[10] (*Id.*) The handwriting and the signature on this AHR notation are different than on the two previous notes, but they are still illegible. However, this shows, contrary to plaintiff's claim, that he was prescribed anti-depressant medication, but that he refused it. This contradicts plaintiff's claim that he was not "treated" for his mental issues. This also shows that different medical personnel treated plaintiff during this time, and he had ample opportunity to report his "serious" injuries if he had chosen to do so.[11]

The January 21st AHR entry also states that an OMH referral was sent because plaintiff also refused lunch that day. It was the ninth meal that plaintiff refused. (*Id.*)

---

[9] At his deposition, plaintiff began by stating that, other than the "interaction" on January 18, 2013, he had no further contact with defendant Waterson. (Pl.'s Dep. at 49-50). However, then plaintiff stated that he did see defendant Waterson for normal sick calls, and he still ignored plaintiff's complaints. (*Id.* at 50-53).

[10] Celexa is an anti-depressant medication. http://www.webmd.com/drugs/2/drug-8603/celexa-oral/details.

[11] Plaintiff claims that only defendant Waterson "colluded" with the defendants who assaulted him. Clearly, plaintiff was examined in the days following the January 18, 2013 incident by medical personnel other than defendant Waterson.

10

The "Hunger Strike Protocol" was initiated. (*Id.*) The note also indicates that plaintiff "refused medical." (*Id.*) On January 22 and 24, 2013, plaintiff again refused his Celexa, and the AHR states that OMH was "aware." (*Id.* at 3). On January 24, 2013, the AHR states that plaintiff was on a "self-imposed" hunger strike. (*Id.*) The notation states that he "keeps telling" OMH that he is depressed, but refused his Celexa because it did not "lift" his depression. (*Id.*) Plaintiff wanted a "new RX." Although the signature is difficult to read, it is again clear that it was not signed by defendant Waterson, and that plaintiff was seen several times after the alleged assault, but never complained about anything other than his depression until several days later.

On January 25, 2013, plaintiff complained of LBP again, but no medications were issued, and the AHR notes that plaintiff was still on a hunger strike. On January 27, 2013, plaintiff was still on his hunger strike, and he refused "weight, vitals, assessment, and urine." (*Id.* at 2). Finally, on January 28, 2013, plaintiff's AHR states that he was admitted to the infirmary on the seventh day of his hunger strike. (*Id.*) A report was "called" to RN Ricardi. (*Id.*) Plaintiff had ample opportunity to report the injuries from his assault. In his reply, plaintiff states that he put in "several sick call slips." (Dkt. No. 77 at 3). While this may be true, the AHR – even those notations which were not written by defendant Waterson – does not report that plaintiff had been assaulted or involved in a use of force.

While this does not settle the assault issue, there is simply no indication that defendant Waterson ignored, or "covered up" serious injuries sustained by plaintiff or

11

denied plaintiff medical care for serious injuries.[12] Plaintiff did not report any "injuries" until January 29, 2013, after which RN D. Mullen examined plaintiff and found "one small healed/scarred over abrasion on left shoulder posterior to clavicle." (Def.s' Ex. E) (Dkt. No. 72-6) (Injury Report). Such bruises are not "serious injuries for purposes of the Eight Amendment. *See Rodriguez v. Mercado*, 00-CV-8588, 2002 WL1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (finding that bruises to plaintiff's head, back and wrists, accompanied by back pain and migraines but no loss of consciousness did not constitute a medical condition that was sufficiently serious for purposes of the Eighth Amendment). Nurse Mullen, who is not a defendant in this action, noted that "no treatment necessary at this time." (*Id.*) Plaintiff has failed to show either a serious injury or deliberate indifference by defendant Waterson.

## IV. <u>Excessive Force/Failure to Protect</u>

### A. **Legal Standards**

#### 1. **Excessive Force**

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights.

---

[12] *See, e.g., Benitez v. Pecenco*, No. 92 Civ. 7670, 1995 WL 444352 at *7 n.5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")); *See also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

*Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To sustain a claim of excessive force, a plaintiff must establish the objective and subjective elements of an Eighth Amendment claim. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). To satisfy the objective element, the plaintiff must show that the resulting harm or deprivation was sufficiently serious. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to this element, the law is clear that "a claim of excessive force may be established even if the victim does not suffer 'serious' . . . or 'significant' injury, . . . provided that the amount of force used is more than 'de minimis,' or involves force that is 'repugnant to the conscience of mankind.'" *United States v. Walsh*, 194 F.3d 37, 47-48 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 7-10) (citations omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### 2. **Failure to Protect**

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

B. **Application**

In this case, plaintiff alleges that, on January 18, 2013, plaintiff was in an OMH cell. (Pl.'s Dep. 36-37). According to plaintiff, defendant Kemp ordered defendants Riley, Stockwell, Moore, and Smith to escort plaintiff back to his own cell. (Pl.'s Dep. at 38-39). Plaintiff stated that defendant Riley came into the cell and asked plaintiff why he was "lying" or why he was "F'ing around."[13] (Pl.'s Dep. at 39). Defendant Riley then told the other three officers to "[g]et him," and the other three officers[14] began beating plaintiff with their hands and feet, while defendant Riley watched. (Pl.'s Dep. at 39, 40-43). Plaintiff claims that they punched him in the face, back, and ribs, continuing to assault him for approximately five minutes. (Pl.'s Dep. at 43). When the

---

[13] Plaintiff later testified that it was his understanding that the officers assaulted him because they believed that he was being misleading or untruthful about his psychiatric condition. (Pl.'s Dep. at 46).

[14] Plaintiff states that defendant Riley watched the assault, but did not touch the plaintiff himself. (Pl.'s Dep. at 44). However, there is no question that if plaintiff's version of the facts is true, defendant Riley would either be liable for the actual assault or for failure to protect.

beating stopped, defendants Smith and Stockwell took plaintiff back to the cell he shared with Inmate Sayfuddin Plair. (Pl.'s Dep. at 44-45). Plaintiff testified that he showed Inmate Plair the bruises on his back, at the top of his eye, and his lip. (Pl.'s Dep. at 47). Plaintiff also claims that he could not breathe. (*Id.*)

Defendants deny that any use of force took place at all. Plaintiff filed a grievance, and each defendant submitted a statement denying any use of force on plaintiff. (Def.'s Ex. B at CM/ECF pp.3-6). Defendants argue that there is no physical evidence of the alleged assault, and that plaintiff's de minimus injury, discovered eleven days after the incident, is insufficient to establish an Eighth Amendment claim. (Def.'s Mem. of Law at 7).

While plaintiff has failed to establish an injury of sufficient severity for a medical care claim, the seriousness of his injuries is only one factor in the excessive force analysis, and a de minimus injury "may still survive summary judgment if there was a malicious use of excessive force." *Johnson v. Woods*, No. 9:07-CV-1018, 2010 WL 2039164, at *15 (N.D.N.Y. Mar. 2, 2010) (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Blyden v. Manusi*, 186 F.3d 252, 263 (2d Cir. 1999)); *Rep't Rec. adopted*, 2010 WL 2039019 (N.D.N.Y. May 21, 2010), *aff'd*, 426 F. App'x 10 (2d Cir. June 17, 2011). Plaintiff alleges that Inmate Plair was a witness to the injuries that plaintiff suffered, but plaintiff has not been allowed to communicate with Inmate Plair to obtain an affidavit.

The court has been involved with plaintiff's effort to obtain Mr. Plair's affidavit. On February 12, 2016, defense counsel filed a status report, after requesting an "investigation" regarding plaintiff's contention that he was given "'the run around'" by

15

DOCCS concerning his desire to obtain an affidavit from Inmate Plair.[15] (Dkt. No. 58). Defense counsel has attached a report from Captain Mulcahy at Great Meadow Correctional Facility, indicating that plaintiff "did not provide any detail regarding his effort to obtain an exemption from the . . . Superintendent." (*Id.*) However, the attached document actually states that Sergeant Lyons "interviewed" plaintiff, who allegedly stated

> that he did have an ongoing case against Stockwell. He also indicated that he has not yet acquired the affidavit, although it is ongoing process through the facility mail. He had nothing else to add regarding his case.

(Dkt. No. 58-1). This statement from Captain Mulcahy does not resolve the issue of plaintiff's ability to obtain an affidavit from Inmate Plair. In fact, it shows that plaintiff was still attempting to obtain the affidavit, but had not yet been able to do so. The fact that plaintiff had "nothing else to add regarding his case" would not be unusual because he was being interviewed by a DOCCS official who was not involved in the action. It is unclear what more plaintiff would have said about the case.

In his response, plaintiff argues that his interrogatories have not been answered, nor has the Superintendent allowed him to obtain Inmate Plair's affidavit. (Dkt. No. 77 at CM/ECF p. 9). Because the issue is essentially one of credibility – defendants allege that there was no incident, and plaintiff claims he was assaulted – the affidavit of an alleged witness to plaintiff's bruises could be extremely important to plaintiff's case.

---

[15] Correspondence between inmates is restricted and must be approved by the Superintendent. 7 N.Y.C.R.R. § 720.6(c)(2).

16

Under Fed. R. Civ. P. 56(d), when facts are "unavailable to the nonmovant," the court may, inter alia, deny the motion and give the party time for additional discovery. Fed. R. Civ. P. 56(d)((1)-(d)(3). Rule 56(d) "'is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality,'" particularly when the opposing party has not had the opportunity to conduct full discovery. *Labombard v. Winterbottom*, No. 8:14-CV-71, 2015 WL 6801206, at *4 (N.D.N.Y. Nov. 5, 2015) (quoting *Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004); *Delphi Delco Elecs. Sys. v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 417-18, 421 (S.D.N.Y. 2004)).

In this case, although based on the other evidence of record, the merits of plaintiff's allegations may be questionable, without more information, this court cannot find that defendants have shown that there is no question of fact regarding plaintiff's allegation that he was assaulted, notwithstanding the apparently minimal injury.[16] Thus, the court will recommend denying summary judgment only on the excessive force/failure to protect issue and allowing plaintiff the additional discovery that he seeks, including obtaining the affidavit from Inmate Plair.[17]

---

[16] Plaintiff claims that, by the time he was examined regarding his allegations of assault, several days had passed, and the bruises had healed.

[17] Plaintiff also refers to unanswered interrogatories. This court is unaware of the interrogatories to which plaintiff refers, but if the interrogatories were not objectionable, defendants should have answered them. The court also notes that on September 3, 2015, the court issued a Text Order which, inter alia, discussed the Plair affidavit. At that time, the court stated that if plaintiff were not successful in communicating with Inmate Plair, "and if any of plaintiff's claims survive substantive motions and will be proceeding to trial," the court would appoint pro bono counsel to obtain deposition or other testimony from Inmate Plair. (Dkt. No. 34). At that time, the court was not aware that the affidavit of Inmate Plair could be material to a motion for summary judgment. Thus, to the extent that

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 72) be **GRANTED IN PART**, that the **MEDICAL CARE CLAIMS** be **DISMISSED**, and the complaint **DISMISSED IN ITS ENTIRETY AS AGAINST DEFENDANTS KEMP AND WATERSON**, and it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 72) be **DENIED IN PART WITH RESPECT TO THE CLAIMS OF EXCESSIVE FORCE AGAINST DEFENDANTS RILEY, STOCKWELL, SMITH, and MOORE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 28, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

my Text Order is inconsistent with this recommendation, I have reconsidered that ruling.